UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MONYE S. STEADMON, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|    vs. | ) Cause No. 2:15-cv-105-WTL-MJD |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|   Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Monye S. Steadmon requests judicial review of the decision of Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Steadmon filed his applications for DIB and SSI in October 2011, alleging disability beginning September 21, 2011. His application was denied initially and upon reconsideration, whereupon he requested and was granted a hearing before an administrative law judge ("ALJ"). Steadmon was represented by counsel at the hearing, which was held on July 29, 2013, before ALJ Edward Studzinski. Steadmon and a vocational expert testified at the hearing. Thereafter, on September 16, 2013, the ALJ rendered his decision in which he concluded that Steadmon was not disabled as defined by the Act. After the Appeals Council denied Steadmon's request for review of the ALJ's decision, he filed this timely action for judicial review.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors.  20 C.F.R. § 404.1520(b).[1]  At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled.  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"), and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. §

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. THE ALJ'S DECISION

The ALJ found at step one that Steadmon had not engaged in substantial gainful activity since his alleged onset date of September 21, 2011. At steps two and three, the ALJ found that Steadmon had the severe impairments of degenerative disc disease, chronic pneumonia, rheumatoid arthritis, and depression, but that his impairments did not meet or medically equal any of the Listings. At step four, the ALJ concluded that Steadmon had

> the residual functional capacity to perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a

>workday, with normal breaks. The claimant cannot be on his feet for more than fifteen minutes at a time, afterwards he will need to sit for five minutes before getting back on his feet. The claimant should also be allowed to stand from a seated position for five minutes after every sixty minutes of sitting. The claimant can continue working when shifting position as described. The claimant needs to use a quad cane when walking, although he does not need it just to stand. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is limited to occasional use of his feet to operate foot controls. The claimant is limited to frequent, but not constant use of his hands for fine or gross manipulation, and is unable to use his hands for forceful grasping or torqueing. The claimant is limited to no more than very occasional precise fine manipulation, such as might be involved in fine painting or soldering extremely small parts. The claimant cannot walk on uneven or wet terrain, and must avoid concentrated exposure to fumes, odors, dusts, gasses, or poor ventilation. The claimant's work must not require him to drive or operate machinery or work around hazards such as unprotected heights, exposed flames, or large bodies of water. The claimant's work must not involve concentrated exposure to unguarded hazardous machinery. The claimant is limited to simple, routine, repetitive tasks and simple decision-making. The claimant's work must involve only occasional and minor changes in the work setting and simple judgment.

Record at 28. Given this RFC, the ALJ determined that Steadmon was unable to perform his past relevant work as an electrician. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Steadmon could perform, including surveillance system monitor, charge account clerk, and hand mounter. Accordingly, the ALJ concluded that Steadmon was not disabled as defined by the Act.

## V. DISCUSSION

Steadmon takes issue with the ALJ's RFC determination, which was based on the ALJ's rejection of Steadmon's testimony regarding his subjective symptoms. Steadmon testified that he was relatively healthy and able to work as an electrician (despite some back issues) when, in June 2011 he began experiencing symptoms that, by September 2011, had worsened such that he went to the hospital complaining of trouble breathing, swelling, and severe muscle pain and weakness. He was admitted and was hospitalized for nine days. His medical records indicate

that he was diagnosed with rhabdomyolysis—a syndrome that results from the death of muscle fibers—and probable polymyositis, prescribed steroids, and referred to several specialists (including a rheumatologist, a neurologist specializing in neuromuscular disorders, and a pulmonologist) for additional testing to confirm his diagnoses. In early 2012 he was tapered off steroids, at which time he was diagnosed with rheumatoid arthritis, the symptoms of which apparently had been masked by the high doses of steroids he had been taking. Steadmon testified that the pain he experienced at the time of the hearing was the same, or worse, than his pain level in September 2011. He testified to difficulty walking and with balance due to muscle pain and fatigue. Pain in his hips and back caused difficulty even with sitting and forced him to have to change positions every 20-30 minutes and to lie down periodically; in fact, he testified that on a typical day he spent 4-5 hours between 9:00 a.m. and 5:00 p.m. lying down to alleviate his pain. He testified that he could stand without support for only about five minutes, stand with a cane for about fifteen minutes, and walk for about twenty feet before needing a break. He also testified that pain and swelling in his hands caused problems with gripping. His wife helped him with bathing and getting dressed because he had difficulty raising his arms and bending over.

  Steadmon's testimony, if fully credited, demonstrates that he does not retain the RFC to work at the level found by the ALJ. Steadmon argues that the ALJ's determination that he was not entirely credible is not properly supported and is based on an improper analysis of the evidence of record. The Court agrees.

  As the ALJ correctly acknowledged, with regard to subjective symptoms such as pain, once he determined that Steadmon had medically determinable impairments that were reasonably expected to produce the symptoms, then the ALJ was required under the policy in place at the

time[2] to evaluate the credibility of the claimant's testimony regarding the extent of those symptoms. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). "The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

In his decision, the ALJ acknowledges Steadmon's allegation of "extreme physical limitations," but finds them to be "not entirely credible." R. at 29. After setting out his view of the evidence of record, the ALJ states:

> I have also considered the claimant's allegations, but do not find them entirely credible. The claimant has alleged a number of very extreme limitations in daily living, alleging his [sic] needs assistance dressing, bathing, and even feeding himself on occasion. However, the claimant's medical records are not suggestive of such crippling impairments. In fact, the claimant's treating sources seem to have difficulty even diagnosing him. Furthermore, the claimant has been encouraged to return to normal activities and avoid bed rest. The claimant also sometimes uses a wheelchair, but the record does not indicate it has been prescribed, and the claimant also demonstrated the ability to walk with a cane, even after he began using a wheelchair. At least some portion of the claimant's condition seems to be mental or emotional in origin. The claimant's doctor has reported the claimant considers himself to be disabled. Furthermore, this doctor

---

[2]Subsequent to the ALJ's decision, the Commissioner superseded SSR 96-7p to eliminate reference to the claimant's "credibility." SSR 16-p (March 16, 2016). The required analysis otherwise remains substantially the same under the new ruling.

>indicated his medical treatment is unlikely to succeed without psychological intervention.

*Id.* at 32. This explanation is troublesome for several reasons.

First, the fact that the pain caused by Steadmon's physical impairments appears to be exacerbated by his depression or other psychological issues is hardly unusual, and certainly doesn't make his allegations of pain any less credible. Experiencing pain with a "psychological component" is not the same as malingering, and none of Steadmon's doctors suggest that he is a malingerer. The ALJ was required to consider the combined effect of Steadmon's impairments, rather than suggest that he is less credible because the two appear to be interrelated. *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) ("The judge's failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error.") (citations omitted); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (error to consider that psychiatric problems can make effects of physical impairments more serious). Further, the fact that Steadmon considers himself disabled is hardly evidence that he is not actually disabled.

Next, the ALJ implies that Steadmon's use of an "unprescribed" wheelchair is an indication that he is exaggerating his symptoms. However, Steadmon appeared at doctor visits in his wheelchair and his physicians did not suggest that that was inappropriate, so it is unclear on what basis the ALJ found it to be so. Indeed, while the ALJ notes that "the record is not clear" whether Steadmon was prescribed either a cane or a wheelchair, Steadmon was using a cane when he was examined by a state consultative examiner, who concluded that "[c]linical evidence strongly supports the need for an ambulatory aid," R. at 384, and the ALJ himself found that Steadmon needed a cane to walk. Further, the ALJ was simply playing doctor when he suggested that it was somehow suspicious that Steadmon alternated between using a cane and a

7

wheelchair. The ALJ points to nothing in the medical evidence that suggests that doing so is inconsistent with his condition, and common sense—for what it's worth—would suggest that some outings might require a wheelchair due to the amount of walking, type of terrain, level of fatigue, etc., while others might not.

Next, the ALJ states that Steadmon has been "encouraged to return to normal activities and avoid bed rest." While that suggests that his medical providers have consistently made such a recommendation—and in another part of his decision the ALJ states that "the claimant's doctors have encouraged him to return to his normal activities and to not just rest in bed—in fact it is contained only in one medical note from Steadmon's initial consultation with a pain specialist, without elaboration or explanation. Further, the import of the ALJ's observation that Steadmon's "treating sources seem to have difficulty even diagnosing him" is unclear to the Court. "As countless cases explain, the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it." *Parker*, 597 F.3d at 922 (citing *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009) (per curiam); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (per curiam); *Johnson v. Barnhart,* 449 F.3d 804, 806 (7th Cir. 2006); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). Further, while it is true that his doctors were not entirely certain what caused the symptoms that led to Steadmon's lengthy hospitalization and continuing problems afterwards, there was no question that *something* serious—and verifiable by objective testing—was wrong with him. Since no one suggested Steadmon was faking his symptoms, it is difficult to understand how Steadmon's bad luck at having something not easily diagnosed relates to his credibility.

That leaves the ALJ's statement that "the claimant's medical records are not suggestive of such crippling impairments." To the extent that the ALJ is referring to the objective medical

evidence, as noted above, the regulations provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). To the extent that the ALJ suggests that Steadmon's physicians do not believe he is as limited as his testimony indicates, that is belied by the fact that two of them, Dr. DeWeese and Dr. Johnson, have opined that Steadmon is disabled by his symptoms. However, the ALJ afforded those opinions "little weight" because they were "very conclusory" and "not consistent with the record as a whole."

That leads to the ALJ's analysis of the evidence of record. The ALJ summarizes some of the testing Steadmon has undergone since his hospitalization and then notes that "[m]ore recently, the claimant's providers are treating him for rheumatoid arthritis, although that is not entirely consistent with all of the claimant's symptoms such as rhabdomyolysis." *Id.* at 29-30. To the extent that this means the ALJ doubts Steadmon's physicians' diagnosis of rheumatoid arthritis based upon his own beliefs regarding whether someone with rhabdomyolysis might also have rheumatoid arthritis, this is both nonsensical—a person can suffer from more than one malady—and an instance of the ALJ impermissibly playing doctor.

The ALJ then notes

Interestingly, rhabdomyolysis can be caused by methamphetamine use and one of the claimant's doctors characterized this as a tempting etiology in light of the claimant's drug screen, which was positive for methamphetamine. The claimant testified he was taking Adderall and that drug is responsible for his methamphetamine positive status, although his medical records do not mention he was taking Adderall.

*Id.* Although he does not explicitly say so, it appears that perhaps the ALJ believes Steadmon lied about being prescribed Adderall to cover up illicit drug use, and as a result found him to be less credible. However, the Court notes that the only medical evidence of record that pre-dates

9

Steadmon's September 2011 hospitalization are the records relating to an August 2011 colonoscopy. Therefore, while it is certainly possible that Steadmon made up the Adderall story, it is just as possible that he was prescribed Adderall but the relevant medical record is not in the administrative record, just like the rest of Steadmon's other earlier records. To the extent that the ALJ relied on the Adderall prescription explanation in making his credibility determination, that was not based on the evidence, but rather on the ALJ's conjecture.

Next, the ALJ opines that Steadmon has "undergone relatively little treatment" for his impairments and notes that he "has not undergone any sort of surgery except for biopsy," but instead "mostly relies on medication to manage his symptoms." *Id.* at 30. While Steadmon does suffer from degenerative disc disease, for which surgical intervention is sometimes appropriate, his medical providers consistently state that his main problem is arthritis; the back issue is secondary. The fact that no surgery is available to treat arthritis says nothing about the level of pain it can cause, or the level of pain it in fact causes Steadmon.

Finally, as relevant to Steadmon's rheumatoid arthritis,[3] the ALJ notes that Steadmon "alleges a number of limitations, but the claimant's records show inconsistent functional deficits." *Id.* at 30. The ALJ then notes that while Steadmon alleges very severe pain, "the claimant does not always seem to be in pain. Although the claimant does sometimes display signs of pain, a surprising number of records indicate that he does not appear to be in acute distress." *Id.* "Acute distress" and "severe pain" are not synonymous, however. As Steadmon correctly points out in his brief, each of the records cited by the ALJ as noting "no acute distress" also makes it clear that Steadmon consistently complains of pain. As just one example, in the

---

[3]The ALJ also discusses the evidence relating to Steadmon's degenerative disc disease, chronic pneumonia, and depression.

10

first record listed by the ALJ, the state consultative examiner contains the "no acute distress" notation, but also notes:

> [d]ependent on wife for help with ADLs.  Walks bent over, slowly, and leans on a cane.  Claimant is unable to stand on heels and toes.  Claimant could not squat.  Claimant is unable to toe-, heel-, and tandem-walk due to gait instability.  The claimant can get on and off the examination table with considerable difficulty and required assistance.   Clinical evidence strongly supports the need for ambulatory aid.

*Id.* at 384.  The ALJ also notes that Steadmon's medical records contain a wide variety of muscle strengths.  There is no medical opinion that such variance is unusual or indicates anything about the veracity of Steadmon's complaints or the severity of his pain; accordingly, it was error for the ALJ to surmise that it did.  In fact, as discussed below, the only medical opinions other than Steadmon's treating physicians were obtained before Steadmon was tapered off steroids and diagnosed with rheumatoid arthritis.  It was error for the ALJ to give "considerable weight" to the RFC determination of the state agency physicians that was not based on the entirety of the evidence and, indeed, explicitly recognized that Steadmon had additional impairments that were still being investigated.  *See Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014) (noting that ALJs must "rely on expert opinions instead of determining the significance of particular medical findings themselves"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (citations omitted).

In light of the errors discussed above with regard to the ALJ's credibility determination and, in turn, his RFC determination, this case must be remanded.  On remand, the ALJ shall also correct an additional error.  The ALJ found that Listing 14.09 was not met or equaled.  However, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir.

2004) (citing 20 C.F.R. § 404.1526(b); S.S.R. 96–6P at 3, *reinstating* S.S.R. 83–19; and *Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir. 1989)). While two state agency physicians completed Disability Determination and Transmittal forms and determined that Steadmon's condition did not meet or equal a listing, *see Scheck*, 357 F.3d at 700 ("These forms conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'") (quoting SSR 96-6P (S.S.A. July 2, 1996)), they did so without the benefit of Steadmon's full medical records, and specifically without his diagnosis of and treatment for rheumatoid arthritis. They listed only COPD and lumbar degenerative disc disease as diagnoses and arrived at their RFC determination based on those impairments, while noting that "investigation was on-going" and "durational requirement have not occurred" with regard to his muscle issue. In other words, those doctors recognized that they did not have sufficient information to determine whether Steadmon was disabled as a result of those issues, and it does not appear that they were even aware that he had developed rheumatoid arthritis. A medical opinion as to equivalency based on all of the relevant medical records must be obtained on remand.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 9/23/16

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.